[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15742
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-20079-WJZ

JEAN-BAPTISTE EDMOND,

                                        Plaintiff - Appellant,

versus

UNIVERSITY OF MIAMI,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 29, 2011)

Before WILSON, MARTIN, and BLACK, Circuit Judges.

PER CURIAM:

Jean-Baptiste Edmond appeals from the district court's grant of summary judgment in favor of the University of Miami ("University"), in Edmond's suit alleging race and national origin discrimination, retaliation, and hostile work environment, brought pursuant to the Civil Rights Act of 1966, 42 U.S.C. § 1981, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760. Edmond argues on appeal that the district court erred by granting summary judgment in favor of the University on each of his underlying claims.[1] After a thorough review of the record and the parties' briefs, we affirm.

I.

Edmond, a black male born in Haiti, filed an amended complaint against his former employer, the University of Miami, asserting claims for discrimination based on race and national origin, retaliation, and hostile work environment, pursuant to § 1981 and the FCRA. Edmond alleges that he was employed as a registered nurse from January 2007 until April 2008. He argues that during that time, (1) he was subjected to derogatory comments and negative treatment based on his race and national origin, (2) his supervisor fabricated performance "write-

---

[1] Edmond also argues that the district court's denial of certain discovery requests constitutes an abuse of discretion. But these denials were ordered by the magistrate judge assigned to Edmond's case, and Edmond did not appeal the relevant orders to the district court. As a result, we lack jurisdiction to review these denials. See United States v. Schultz, 565 F.3d 1353, 1359–60 (11th Cir. 2009).

ups" and only advised him of them in February 2008, and (3) he was ultimately terminated as retaliation for complaining about these discriminatory acts. He concedes, however, that during this time he received at least some performance "write-ups" (negative performance citations stemming from perceived inadequate conduct). Edmond responded to these write ups on March 1, 2008, but was then terminated on April 10, 2008.

Shortly thereafter, Edmond brought the underlying discrimination lawsuit. Following discovery, the magistrate judge issued a report and recommendation, in which she recommended granting summary judgment in favor of the University. The district court adopted this report and recommendation in full, and accordingly granted summary judgment in the University's favor.

On appeal, Edmond argues that the district court erred in granting summary judgment because disputed issues of fact remain on each of his underlying claims. We address these arguments in turn.[2]

---

[2] This Court reviews a district court's grant of summary judgment <u>de novo</u> and applies the same legal standards that governed the district court's analysis. <u>Penley v. Eslinger</u>, 605 F.3d 843, 848 (11th Cir. 2010). Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must view the facts and make any reasonable inferences that may be drawn from those facts in the light most favorable to the non-moving party. <u>Penley</u>, 605 F.3d at 848. However, the inferences must be supported by the record, and a genuine dispute of material fact requires more than "some metaphysical doubt as to the material facts." <u>Id.</u> (quotation marks omitted). Furthermore, a dispute of fact "will only preclude summary judgment if the dispute might affect the outcome of the suit under the governing law." <u>Id.</u> (quotation marks

3

II.

Edmond argues first that he has sufficiently articulated a prima facie case of discrimination on grounds of race and national origin, which precludes summary judgment in this case. We cannot agree.

Discrimination claims under § 1981 and the FCRA are governed by the same requirements of proof and the same analytical framework applicable to Title VII claims. Smith, et al., v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 n.14 (11th Cir. 2011) (§ 1981 discrimination claims); Harper v. Blockbuster Entm't Corp.,139 F.3d 1385, 1387 (11th Cir. 1998) (FCRA discrimination claims). Thus, a plaintiff may prove a claim of discrimination through circumstantial evidence under the three-step, burden-shifting framework established by the Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973), or alternatively, by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. Smith, 644 F.3d at 1325 (stating that "the McDonnell-Douglas framework is not, and never

omitted). Thus, a court must deny summary judgment only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

Moreover, because our review is de novo, we need not consider Edmond's initial argument that the magistrate judge failed to exercise independent judgment in her recitation of the facts. Even if there was any error below, it will be remedied by our "independent consideration of all facts properly before [us]." United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987).

4

was intended to be, the <u>sine qua non</u> for a plaintiff to survive a summary judgment motion in an employment discrimination case"). Here, however, Edmond argues only that he has set forth a <u>prima facie</u> case.

Under the <u>McDonnell-Douglas</u> framework, the plaintiff must first establish a <u>prima facie</u> case to raise the presumption that his employer was motivated to treat him unfavorably on the basis of his protected status—including race or national origin. <u>See id.</u> at 1325. When the plaintiff claims that he was terminated on account of his protected status, he must establish four elements: (1) that he is a member of the protected class; (2) that he was qualified for the position that he held; (3) that he was discharged from that position; and (4) that in terminating his employment, his employer treated him less favorably than a similarly situated individual outside of his protected class. <u>Id.</u> Under the fourth element of this standard, to be an adequate comparator, the preferentially treated individual must be from outside the plaintiff's protected class and must be similarly situated in all respects, including having been involved in or accused of the same or similar conduct. <u>Id.</u> at 1326 n.17.

We find that Edmond has failed to identify an appropriate similarly situated individual to satisfy the fourth element of the <u>McDonnell-Douglas</u> framework. In his briefing to this Court and in proceedings prior to this appeal, Edmond

identifies only one such person who he argues is such a similarly situated individual. Yet this individual, although employed in the same job as was Edmond, also shares his race and national origin. She is thus not "outside of his classification" for purposes of establishing the prima facie case. See generally Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). As a result, because this is the only individual identified by Edmond as a comparator for purposes of making his claim, we find that summary judgment is appropriate in favor of the University on Edmond's discrimination claims.

## III.

Edmond next argues that the district court erred in granting summary judgment in favor of the University on his retaliation claim. To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008); see also Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010) (stating that retaliation claims brought under the FCRA are analyzed under the same framework as Title VII). After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory

reason for the challenged employment action as an affirmative defense to liability. Goldsmith, 513 F.3d at 1277. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited retaliatory conduct. Id.

We conclude that Edmond has not satisfied his burden of showing that the University's asserted legitimate, non-discriminatory reason for terminating him was merely pretext for retaliation. Here, the University asserts that Edmond's poor performance placed patients in danger and otherwise fell below acceptable employment standards. Edmond argues that the University's explanation is pretextual, but in so doing relies largely on his own averments that he was a high-performing employee. This is insufficient to satisfy his evidentiary burden at summary judgment. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its action." (quotation marks omitted)). Morever, while Edmond has identified one witness that is equivocal regarding the motivation of a supervisor that publicly reprimanded Edmond, we find this to fall short of the "significantly probative evidence showing that the asserted reason is merely a pretext" that we

7

have required in previous retaliatory conduct cases.  See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).  Therefore, we find that summary judgment is appropriate in favor of the University on Edmond's retaliation claim.

IV.

Finally, Edmond argues that the University is not entitled to summary judgment on his claim that he was subjected to a hostile work environment.  To establish a hostile work environment claim under section 1981, a plaintiff must show harassing behavior sufficiently severe or pervasive to alter the conditions of his employment.  Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009).  This requires that the plaintiff prove: (1) that he belongs to a protected group; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, such as race or national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.  Id.

The fourth element requiring that the harassment be sufficiently severe or pervasive contains both subjective and objective components.  Id. at 1297.  To be actionable, the harassment must result in both an environment that a reasonable

person would find hostile or abusive and an environment that the plaintiff subjectively perceived to be abusive. Id. The objective element is not subject to mathematical precision, but this Court can infer that an environment is "hostile" or "abusive" from the circumstantial facts viewed in their proper context. Id. This requires the Court to look to factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id.

Edmond has failed to show that he suffered from harassment rising to the level of severity or pervasiveness required to establish a hostile work environment claim. In support of his claim, he argues that "he was subjected to unwelcome harassment including . . . telling him that he has a Haitian accent; . . . yelling at him in the presence of patients, family members and co-workers; assigning [him] patients who have animosity against Haitians; and calling [a coworker] to interpret for [him] in the presence of others." This evidence certainly shows that Edmond and James had a difficult relationship, but does not indicate that he regularly suffered from severe or pervasive hostile conduct. Rather, and largely in light of its infrequency, it is the sort of interaction that falls to satisfy Bryant's objective

standard. 575 F.3d at 1297. Therefore, we find the University to be entitled to summary judgment on this claim as well.

V.

Accordingly, we affirm the district court's grant of summary judgment in favor of the University on each of Edmond's discrimination claims.

**AFFIRMED.**