**Charnetta GADLING-COLE, PhD,**
**Plaintiff-Appellant,**

v.

**Mark LAGORY, et al., Defendants,**

**Board of Trustees of the University of Alabama, The, Defendant-Appellee.**

**No. 15-14781**
**Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(January 27, 2017)

---

Roderick Walls, Walls & Cooper, LLC, Birmingham, AL, for Plaintiff-Appellant

David R. Mellon, Audrey Y. Dupont, Earlisha S. Williams, The University of Alabama at Birmingham, Birmingham, AL, for Defendant-Appellee

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Charnetta Gadling-Cole ("Plaintiff") sued her former employer, Defendant Board of Trustees of the University of Alabama ("Defendant") under Title VII of the Civil Rights Act of 1964, alleging that her termination was a product of racial discrimination. Because Plaintiff has not demonstrated that Defendant's reasons for her termination are pretextual and that unlawful discrimination is the real reason, we affirm the district court's grant of summary judgment in Defendant's favor.

## I. INTRODUCTION

### A. Factual Background

On March 2, 2009, Charnetta Gadling-Cole ("Plaintiff") received an offer for a full-time appointment as an Assistant Professor in the Department of Sociology and Social Work at the University of Alabama at Birmingham ("UAB"). Her initial appointment was for a two-year period, effective August 15, 2009, and was renewable annually for five years or until tenure was granted. Her appointment letter stated that if she did not complete her outstanding PhD requirements by the appointment start date, her appointment position would be as an Instructor, and if she did not complete her degree requirements by February 15, 2010, her appointment would not

be extended past the initial two-year period. Plaintiff did not meet the February 15 deadline, and was informed in October 2010 that her contract would terminate May 14, 2011. Plaintiff did complete her degree requirements by November 2010, however, and she was offered a full-time Assistant Professor position beginning August 15, 2011, by Dr. Thomas DiLorenzo, Dean of the College of Arts and Sciences. The appointment was renewable annually and would expire at the end of the seventh year (2017-2018 academic year) if she did not receive tenure.

During the course of her employment with UAB, Plaintiff received several performance reviews. Her 2010 evaluation, given in June 2011 by Dr. William Cockerham (then interim chair of the Department of Sociology and Social Work), indicated an overall "positive record in 2010." Dr. Cockerham noted that Plaintiff was the only tenure-track faculty member in the Department who did not publish anything in 2010, but also indicated this was mitigated somewhat by her being pregnant and completing her PhD requirements. Dr. Cockerham also noted that Plaintiff's record of service was "excellent," but that her teaching results were mixed, including receiving the lowest student course evaluation in the Department for any course taught by faculty. Dr. Cockerham closed the review by advising Plaintiff that she would need to publish regularly and be attentive in making changes to her teaching in order to have consistently good evaluations. Plaintiff disagreed with Dr. Cockerham's evaluation of her 2010 record.

Between July 2011 and February 2012, Plaintiff filed four complaints of racial and gender discrimination and retaliation with the EEOC. The first complaint alleged that Plaintiff was harassed by Dr. Mark LaGory (who preceded Dr. Cockerham as the chair of Plaintiff's Department) and Dr. Cockerham during her maternity leave (September 2010–January 2011) regarding her submission of leave paperwork and completion of her PhD requirements, as well as that Dr. Cockerham failed to update her employment contract to note that she received her PhD.

Plaintiff's second complaint alleged that Dr. Cockerham retaliated against Plaintiff for filing an EEOC complaint by not submitting a letter of support for her grant proposal, not submitting paperwork for an international course she had developed, not granting her relief time to participate in certain programs, not giving her credit and pay for teaching twelve independent study courses, not giving her a raise or information about Department changes, and not providing assistance with an overloaded online course.

Plaintiff alleged in her third complaint that Dr. Lisa Baker, chair of the Department of Social Work,[1] continued to retaliate against Plaintiff. Specifically, Plaintiff alleged that Dr. Baker tried to sabotage an initiative proposed by Plaintiff, "attempted to be unaware" of Plaintiff's research agenda and work efforts, did not provide Plaintiff with time to work on outside programs, and added administrative tasks to Plaintiff's workload.

Plaintiff's fourth complaint alleged that Dr. Baker retaliated against Plaintiff by issuing Plaintiff a written warning, making false statements about her work ethic and accomplishments, not allowing her to teach a writing course she had developed and taught previously, sending harassing emails, and saying that Plaintiff could not be trusted because she filed an EEOC complaint. Plaintiff received a Dismissal and Notice of Rights for all four of her EEOC complaints on June 6, 2012.

---

1. In 2011, Department of Sociology and Social Work split into two separate departments.

In April 2012, Dr. Cockerham reviewed Plaintiff's performance for January through September 2011. Dr. Cockerham indicated that Plaintiff's overall level of contribution to the Department was the lowest of any faculty member, and that she was "extraordinarily uncooperative in discussing faculty business and ignored ... advice." Plaintiff's teaching scores in 2011 did not exceed the Department average, and Plaintiff did not have any publications prior to October 2011. Dr. Cockerham concluded that Plaintiff's performance was unsatisfactory and recommended that Plaintiff not be reappointed.

Plaintiff received a full 2011 evaluation from Dr. Baker. Dr. Baker similarly concluded that Plaintiff's performance did not meet expectations. Dr. Baker noted that Plaintiff's scholarly productivity was low, that Plaintiff's teaching scores in 2011 were among the lowest in the Department, and that her service to the Department needed significant improvement. In a separate letter from Dr. Baker dated May 11, 2012, Plaintiff received notice that her appointment would not be renewed and her last date of employment would be May 15, 2013. The letter stated that the non-renewal of Plaintiff's contract was based on having few publications and low teaching evaluations, failing to contribute to the Department and to fulfill other campus obligations, demonstrating disrespectful and antagonistic behavior, and violating Department and university procedures.

## B. Procedural History

Plaintiff sued Defendant under Title VII of the Civil Rights Act of 1964, alleging racial and gender discrimination and retaliation. Plaintiff also sued Drs. LaGory, Cockerham, Baker, and DiLorenzo under 42 U.S.C. § 1983 for racial and gender discrimination and retaliation. The district court granted a motion to dismiss as to all claims except the Title VII racial discrimi-

nation claim against Defendant. Defendant moved for summary judgment on the remaining Title VII claim, which the district court granted. Plaintiff appeals the district court's grant of summary judgment.

## II. DISCUSSION

### A. Plaintiff's Title VII Discrimination Claim

Title VII prohibits an employer from discriminating against an individual on the basis of race. 42 U.S.C. § 2000e-2(a)(1). When a Title VII plaintiff offers only circumstantial evidence of discrimination, as is the case here, that claim is analyzed through the three-part *McDonnell Douglas* burden shifting framework. *Burke–Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Under this framework, a plaintiff must establish a *prima facie* case of racial discrimination, which requires "establish[ing] facts adequate to permit an inference of discrimination." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008). Specifically, Plaintiff must show that she: (1) is a racial minority; (2) was subjected to adverse employment action; (3) was treated less favorably than similarly situated, non-minority employees; and (4) she was qualified to do the job. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

The inference of discrimination is rebuttable, and "the burden of producing evidence that the employer's action was taken for a legitimate, non-discriminatory reason then shifts to the employer." *Rioux*, 520 F.3d at 1275. Because this is a burden of production, not proof, the burden is easy to satisfy. *Holifield*, 115 F.3d at 1564; *Lee v. Russell Cty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982). Once satisfied, the burden shifts back to the plaintiff to demonstrate that the "articulated reason for the adverse employment action is a mere pretext for discrimination," which merges with the plaintiff's ultimate burden of

showing intentional discrimination. *Holifield*, 115 F.3d at 1565.

The pretext inquiry looks at the employer's beliefs, not the employee's own perceptions of her performance. *Id.*; *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (noting that the pretext inquiry does not focus "on reality as it exists outside of the decision maker's head"). Thus, the plaintiff must show both that the employer's given reasons for the adverse employment action are ill-founded, and that unlawful discrimination was the true reason. *Alvarez*, 610 F.3d at 1267. The court does not "second-guess the wisdom of an employer's business decisions," and a Title VII case is not the place for plaintiffs to "litigate whether they are, in fact, good employees." *Id.* at 1266 (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002)).

2. Concerning the elements of the *prima facie* case, the parties dispute only whether Plaintiff has shown that she was treated less favorably than a proper comparator. Because Plaintiff's claim ultimately fails on the pretext step of the analysis, we need not address the issue of a proper comparator to decide the case against Plaintiff. *Alvarez*, 610 F.3d at 1265 ("It matters not whether [a plaintiff] has made out a prima facie case if she cannot create a genuine issue of material fact as to whether [a defendant's] proffered reasons for firing her are pretext masking discrimination.").

3. Defendant offers the following reasons for Plaintiff's termination:
   • Plaintiff had no publications in 2010.
   • Plaintiff was the only tenure-track faculty member in 2010 in the Department of Sociology and Social Work who did not publish anything in 2010.
   • Plaintiff had the lowest student course evaluation in 2010 in the Department of Sociology and Social Work for [a statistics course].
   • Plaintiff was told in her 2010 annual evaluation she needed to publish regularly and make any necessary changes to have consistently good teaching evaluations.

We assume without deciding, as did the district court, that Plaintiff has set out a *prima facie* case of discrimination.[2] We thus now look to see whether Defendant has articulated any legitimate, non-discriminatory reasons for Plaintiff's termination. In its motion for summary judgment, Defendant set out fourteen reasons justifying Plaintiff's termination.[3] Finding evidence in the record to support each of Defendant's articulated reasons as being legitimate, nondiscriminatory reasons for Plaintiff's termination, we agree with the district court that Defendant has met its burden on this step of the *McDonnell Douglas* analysis.

## B. Whether Plaintiff has Shown Evidence of Pretext

We now turn to the question of whether Plaintiff has adequately rebutted these

   • Plaintiff's student evaluation scores in 2011 did not exceed the average for the Department of Social Work.
   • Plaintiff had no publications prior to October, 2011.
   • Plaintiff's level of contribution during the first ten months of 2011 was the lowest of any serving faculty member in the Department of Sociology and Social Work.
   • Plaintiff was uncooperative in discussing faculty and Department business.
   • Plaintiff's research and scholarship productivity in 2011 was low.
   • Plaintiff's teaching scores in 2011 were among the lowest in the Department of Social Work.
   • Plaintiff's service to the Department and interaction with colleagues was subpar.
   • Plaintiff's participation in the Health Disparities Research Training Program ("HDRTP") was problematic both in attendance and with a grant, and Plaintiff only participated in 60.7% of the Resource Center for Minority Aging Research ("RCMAR") learning sessions.
   • Plaintiff's participation in the Geriatric Education Center Faculty Scholar Program ("GEC FSP") was poor.
   • Plaintiff failed to meet expectations for a tenure-track faculty member.

reasons as merely pretexual and established that unlawful discrimination was the real reason for her termination. We conclude she has not.

■ As an initial matter, we note that Plaintiff has waived any arguments concerning pretext. To properly assert arguments of pretext, Plaintiff must raise the issue "plainly and prominently" in her briefs, and it is insufficient to address the issue through mere passing references or in a perfunctory manner without support. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014). A party abandons any issue not properly briefed in this way. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Plaintiff does not mention pretext at all in her opening brief, and in her reply brief simply notes what sort of evidence may be offered to show evidence of pretext, but does not discuss any particular evidence in this case. By failing to address the issue of pretext, Plaintiff has abandoned her challenge to the district court's judgment on that ground, essentially waiving her claim altogether. *See Sapuppo*, 739 F.3d at 680 ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

■ Plaintiff's claim fails even considering Plaintiff's pretext arguments made to the district court. We agree with the district court that Plaintiff failed to adequately rebut as pretextual each of Defendant's proffered reasons for her termination. Plaintiff has not refuted as factually incorrect Defendant's reasons related to Plaintiff's lack of publications or low teaching scores, nor has Plaintiff shown that Dr. Baker did not rely on these reasons when declining to renew Plaintiff's contract. Similarly, though Plaintiff "disagrees" with the more subjective conclusions about her performance, she offers no evidence to rebut these reasons or otherwise show that Dr. Baker did not rely on these reasons as well when terminating Plaintiff. Giving weight here to Plaintiff's excuses or reasons for disagreement would be engaging in the sort of second-guessing of business decisions that is beyond our province in Title VII cases. Plaintiff has not shown that Defendant's proffered reasons for her termination are a pretext for racial discrimination, and thus her discrimination claim fails.

## III.  CONCLUSION

Once a defendant employer under Title VII has articulated legitimate, nondiscriminatory reasons for terminating an employee, the plaintiff's claim survives summary judgment only if the plaintiff can rebut these reasons as pretextual. Plaintiff has failed to rebut as pretextual Defendant's reasons for her termination, and so the district court properly granted Defendant's motion for summary judgment. The district court's judgment is **AFFIRMED**.