[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11908

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2011
JOHN LEY
CLERK

D. C. Docket No. 1:08-cv-01974-WSD

DR. P. K. EBERT,

                                        Plaintiff-Appellant,

versus

THE BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,
d.b.a. Macon State College,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 21, 2011)

Before MARTIN, BLACK and RESTANI,[*] Circuit Judges.

PER CURIAM:

_____

[*]Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

Dr. P.K. Ebert appeals the district court's grant of summary judgment in favor of the Board of Regents of the University System of Georgia, doing business as Macon State College (MSC), on her gender discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). After review of the record and the parties' briefs, and the benefit of oral argument, we affirm the district court's grant of summary judgment.

Ebert was an Assistant Professor in the Information Technology (IT) Division at MSC. In this lawsuit, she asserts the head of the IT Division, Dr. Jeffrey Stewart, gave her a negative performance evaluation on account of her gender, in violation of Title VII. She also claims MSC relied on that performance evaluation in justifying the nonrenewal of her contract, when her contract was in fact not renewed because of her gender, in violation of Title VII.

To establish a disparate treatment claim under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), a plaintiff must first establish a prima facie case of discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). If the plaintiff meets her burden of establishing a prima facie case of gender discrimination, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 1528. If the employer comes forward with such a reason, the

2

employee must then prove that the legitimate reason offered was a mere pretext for an illegal motive. *Id.* The employee may meet her burden "either by offering evidence that [the employer] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, unless the record conclusively shows that the real motive was a non-proffered reason that is non-discriminatory." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). "To show pretext, [the plaintiff] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.*, quoting *Combs*, 106 F.3d at 1538.

The Supreme Court has held a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier or fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000). However, such a showing will not always be adequate to sustain a finding of liability. *Id.*

> Certainly, there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could

conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* Although *Reeves* involved judgment as a matter of law under Rule 50 rather than a summary judgment motion, we have held the same analysis applies when reviewing a motion for summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000). To show pretext, a defendant's burden "is to show not just that [the employer's] proffered reasons for firing her were ill-founded but that unlawful discrimination was the true reason." *Alvarez*, 610 F.3d at 1267.

In this case, the district court assumed without deciding that Ebert could state a prima facie case of discrimination. The district court also concluded MSC met its burden of articulating a legitimate, nondiscriminatory reason for her 2005 performance evaluation and the nonrenewal of her contract. The district court granted summary judgment to MSC because it determined Ebert failed to establish a genuine issue of fact about whether MSC's proffered reasons were pretext for discrimination.

4

In support of her contention that she created a genuine issue of material fact regarding whether MSC's proffered reasons for her performance evaluation were pretextual, Ebert submitted the deposition testimony of Dr. Susan Harrington.[1] Harrington was enlisted by MSC to review Stewart's negative performance evaluation of Ebert as part of MSC's investigation of Ebert's internal grievance. Dr. Harrington concluded that "[i]t appeared to me [Stewart] was trying to get rid of [Ebert]."

Even if we assume Ebert has submitted evidence creating a genuine issue of material fact regarding MSC's proffered reason for her performance evaluation, summary judgment can also be granted if Ebert created only a weak issue of fact as to whether MSC's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *See Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109. While Harrington stated Stewart was "trying to get rid of" Ebert, she never stated that Stewart was "trying to get rid of"

---

[1] Ebert asserts the district court erred in citing *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008) to conclude that Harrington's "opinions and assessments are not evidence of pretext." In *McCann*, this Court explained that "'differences in the evaluation of [a plaintiff's] performance do not establish a genuine issue on pretext. Different supervisors may insist upon different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important.'" 562 F.3d at 1337 (citation omitted). We agree with Ebert that Harrington was not evaluating Ebert's performance as her supervisor, instead she was investigating the factual basis of Ebert's grievance for MSC. Thus, we consider her conclusions.

Ebert because of her gender.  In fact, Harrington acknowledged that Ebert was very negative about Stewart and that Ebert was very vocal about her opinion. Stewart testified that Ebert's low rankings in scholarship and teaching effectiveness were in part because he had higher expectations of Ebert.  The record evidence supports Stewart's testimony that Ebert had more work experience, education, and a much higher salary than others in her position.  In fact, Ebert's annual salary was over $20,000 more than the next-highest-paid Assistant Professor in the IT Department.

Ebert has not raised a genuine issue of material fact that unlawful discrimination was the reason for her performance evaluation and eventual termination.  *See Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109, *Alvarez*, 610 F.3d at 1267.  The record is devoid of evidence that Ebert was fired because of her gender.  The evidence supports that Stewart and Ebert did not get along, and that Stewart had higher expectations for Ebert because of her work experience, education, and high salary.  These are all non-discriminatory reasons for her performance evaluation and eventual termination.  Ebert's evidence of gender discrimination "is simply too weak to raise a genuine fact issue."  *See Alvarez*, 610 F.3d at 1268.  Thus, we affirm the district court's grant of summary judgment.

**AFFIRMED.**

MARTIN, Circuit Judge, dissenting:

I respectfully dissent because, in contrast to the majority opinion, I would hold that the District Court erred in granting summary judgment to Macon State College ("MSC"). Specifically, I disagree with the majority's conclusion that Dr. P.K. Ebert "has not raised a genuine issue of material fact that unlawful discrimination was the reason for her performance evaluation and eventual termination."

I begin by observing that Dr. Ebert has met the legal standard for showing, at the summary judgment stage, that MSC's proffered reasons for her negative performance evaluation and the nonrenewal of her employment contract were a pretext for discrimination. A plaintiff may show pretext either by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). In "determin[ing] whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct," this Court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or

7

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation marks omitted). But the plaintiff "is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). This being the case, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

Dr. Ebert has, as our precedent requires, met MSC's reason head on and rebutted it with competent evidence. Specifically, Dr. Ebert relies on the deposition testimony of Dr. Susan Harrington, who was enlisted by MSC to review Dr. Jeffrey Stewart's negative performance evaulation of Dr. Ebert as part of MSC's investigation of Dr. Ebert's internal grievance. In her deposition, Dr. Harrington was asked: "Why did you believe that Jeff Stewart's ranking of [Dr. Ebert] in both scholarship and teaching effectiveness was so low? Did you draw any conclusions in your investigation?" Dr. Harrington answered: "It appeared to me he was trying to get rid of her." Thus, the jury in this case would be able to

8

hear testimony that a person investigating Dr. Ebert's internal grievance for MSC came to the conclusion that the reason MSC gave for her negative evaluation was not the real reason. This is, almost by definition, evidence of pretext that a jury is free to accept.[1]

The majority concludes that despite this evidence of pretext, MSC was entitled to summary judgment because "[t]he record is devoid of evidence that Ebert was fired because of her gender." But the Supreme Court has explained that "[t]he factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749 (1993). Here, the District Court assumed that Dr. Ebert had stated a prima facie case. "Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination . . . ." Id. "[U]pon such rejection, no additional proof of discrimination is *required*." Id. (quotation marks and alterations omitted).

The majority's reliance on Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000), is misplaced. In that the case, the Supreme

---

[1] I agree with the majority that the District Court erred in relying on McCann v. Tillman, 526 F.3d 1370 (11th Cir. 2008) to conclude that Dr. Harrington's "opinions and assessments are not evidence of pretext."

Court reaffirmed its holding in <u>Hicks</u> that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves</u>, 530 U.S. at 148, 120 S. Ct. at 2109. The <u>Reeves</u> Court explained, in dicta, that even upon the establishment of a prima facie case of discrimination and sufficient evidence of pretext

> an employer would be entitled to judgment as a matter of law if the record *conclusively* revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue *and* there was *abundant and uncontroverted independent* evidence that no discrimination had occurred.

<u>Id.</u> (emphasis added). But neither circumstance is presented by this case.

First, the record does not *conclusively* reveal any other nondiscriminatory reason for the employer's decisions. The majority hypothesizes that Dr. Ebert's negative performance evaluation and the nonrenewal of her contract may have resulted from her strained relationship with Dr. Stewart, his high expectations of her, in light of her advanced work experience and education, and her high salary. But nothing in the record before us compels those inferences in favor of MSC.[2]

---

[2] Specifically, while it is undisputed that Dr. Ebert and Dr. Stewart had a strained relationship, it is reasonable to infer that this strain may have been due in part to Dr. Ebert's gender. Thus, I cannot agree that the evidence that Dr. Ebert and Dr. Stewart did not get along is conclusive evidence of a nondiscriminatory reason for the employment actions. The fact that they did not get along might, of course, be an alternative cause of the employment action, but it

As such, although a jury may be free to make those inferences, we are not.  See

Chapman, 229 F.3d at 1023 ("[T]he court must view all evidence and make all

reasonable inferences in favor of the party opposing summary judgment."

(quotation marks omitted)).

Second, Dr. Ebert has not created merely a "weak issue of fact as to whether

the employer's reason was untrue."  Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.

Dr. Harrington—the very person that MSC enlisted to help investigate Dr. Ebert's

claim that her performance evaluation was discriminatory—was unequivocal in

stating her opinion that it appeared that Dr. Stewart "was trying to get rid of" Dr.

Ebert.  This is strong evidence of pretext, particularly when compared to the more

indirect evidence of pretext that we may consider in the form of "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the

---

might also be a symptom of illegal discrimination.  Indeed, the Reeves Court itself seemed to view evidence that the decision-making supervisor did not get along with the subordinate employee as evidence supporting that employee's claim of discrimination.  See Reeves, 560 U.S. at 151–52, 120 S. Ct. at 2111–12.  Certainly, the evidence of Dr. Ebert's strained relationship with Dr. Stewart might support a variety of reasonable inferences, including the one suggested by the majority.  But deciding among reasonable inferences from the evidence is a task entrusted to the jury.

Moreover, MSC argued that Dr. Ebert's performance evaluation and the nonrenewal of her contract were due to her performance when measured against her salary and the expectations for someone with her position, education and experience.  Thus, her salary and Dr. Stewart's expectations of her are not "other, nondiscriminatory reasons," as contemplated by Reeves.  Id. at 148, 120 S. Ct. at 2109.  Instead, they are simply a reframing of the proffered reason, which Dr. Ebert has met head on and rebutted with competent evidence.  It should therefore be left to the jury to decide whether Dr. Ebert's performance, as measured against her salary and the expectations of her, was the reason for the adverse employment actions in this case.

employer's proffered legitimate reasons for its action." Combs, 106 F.3d at 1538 (quotation marks omitted).

Nor is there "abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148, 120 S. Ct. at 2109. For example, Dr. Ebert points to an incident in which Dr. Stewart, in response to a security concern voiced by one female professor, decided to move all female professors' offices to the first floor, even though the women's bathroom was on the second floor, while allowing five male professors to remain in their second floor offices. The District Court appropriately described Dr. Stewart's actions as "arguably . . . paternalistic." To be sure, this incident alone may not be strong enough evidence of discriminatory animus to survive a motion for summary judgment. But when this evidence is combined with a prima facie case and sufficient evidence for a jury to reject MSC's proffered reason for its actions, summary judgment is no longer appropriate. Here, it would be reasonable for a jury to infer from the fact that Dr. Stewart treated women differently than men with respect to other employment-related decisions that he also treated Dr. Ebert differently on the basis of gender in making the decisions at issue in this case.

In going beyond the narrow circumstances described by Reeves and instead looking for additional "evidence that Ebert was fired because of her gender," the

majority does precisely what the Supreme Court told us we could not do in Hicks and Reeves. That is, the majority implicitly "proceed[s] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." Reeves, 530 U.S. 149, 120 S. Ct. 2109.[3] In her concurring opinion in Reeves, Justice Ginsburg stated her expectation that "the circumstances in which plaintiffs will be required to submit evidence beyond [establishing a prima facie case and producing sufficient evidence of pretext] in order to survive a motion for judgment as a matter of law. . . . will be uncommon." 530 U.S. at 154, 120 S. Ct. at 2112 (Ginsburg, J., concurring). As Justice Ginsburg explained,

> it is a principle of evidence law that the jury is entitled to treat a party's dishonesty about a material fact as evidence of culpability. Under this commonsense principle, evidence suggesting that a defendant accused

---

[3] A comparision between the majority's reasoning in this case and the Fifth Circuit's reasoning that was rejected in Reeves is illuminating on this point. The Fifth Circuit in that case concluded that the plaintiff established a prima facie case and "very well may" have offered sufficient evidence that the employer's proffered reason for the adverse action was pretextual, but concluded that the employer was entitled to judgment as a matter of law because the plaintiff failed to "present[] sufficient evidence that [the plaintiff's] age motivated [the employer's] . . . decision." Reeves, 530 U.S. at 139, 120 S. Ct. at 2104 (quotation marks and citations omitted). In reaching this conclusion, the Fifth Circuit "weighed [the plaintiff's] *additional* evidence of discrimination against other circumstances surrounding his discharge." Id. (emphasis added). The Supreme Court in Reeves criticized the Fifth Circuit for "ignor[ing] the evidence supporting [the plaintiff's] prima facie case and challenging [the employer's] explanation for its decision." Id. at 146, 120 S. Ct. at 2108.

Likewise, here, the majority explains that even assuming that Dr. Ebert has established a prima facie case and offered sufficient evidence of pretext, "[t]he record is devoid of evidence that Ebert was fired because of her gender." In reaching this conclusion, the majority looks for *additional* evidence of discrimination and considers the circumstances surrounding Dr. Ebert's performance evaluation and nonrenewal, but ignores the evidence that Dr. Ebert relies on to establish a prima facie case and to show that MSC's proffered reason for its actions was pretext.

13

of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation.

Id. (citation omitted).  I fear that, in failing to heed Justice Ginsburg's warning, the majority applies dicta from Reeves in a way that effectively nullifies that case's holding, and calls into question whether Mr. Reeves himself would prevail under the majority's analysis.

For these reasons, I would reverse the grant of summary judgment and remand the case to the District Court to address the remaining parts of the McDonnell Douglas framework, including whether Dr. Ebert has made out a prima facie case of discrimination.[4]

---

[4] I recognize that the District Court merely assumed without deciding that Dr. Ebert had made out a prima facie case.  Although this is an issue of law subject to de novo review that this Court is free to decide for the first time on appeal, see SEC v. Ginsburg, 362 F.3d 1292, 1301 (11th Cir. 2004), it is neither prudent nor necessary to do so in this case.  See, e.g., Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1261 n.14 (11th Cir. 2007) ("[T]he district court did not rest its grant of summary judgment for [the defendant] on this ground, and we decline to resolve this fact-intensive question in the first instance on appeal.").