[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10721
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-01100-WKW-WC


BETHANIE ELAINE PETERS,

                                                                Plaintiff-Appellant,

versus


HEALTHSOUTH OF DOTHAN, INC.,

                                                                Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 10, 2013)

Before CARNES, Chief Judge, HULL and JORDAN, Circuit Judges.

PER CURIAM:

        Bethanie Peters, a white female proceeding pro se, appeals the district

court's grant of summary judgment in favor of her former employer, HealthSouth

of Dothan, Inc., on her claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.[1]  The district court found that Peters failed to establish a prima facie case that her termination was racially motivated because there was no evidence that HealthSouth had treated a similarly situated employee of a different race more favorably.  The court similarly found that Peters had not made out a prima facie case of unlawful retaliation because her workplace complaints of racial discrimination did not prompt an objectively severe hostile work environment. Peters now challenges those specific findings, as well as the general propriety of granting summary judgment in favor of HealthSouth.[2]

## I.

HealthSouth is a rehabilitation hospital that provides specialized inpatient and outpatient therapy for patients recovering from a variety of medical conditions, including strokes, amputations, traumatic brain injuries, and spinal cord injuries. HealthSouth's Chief Executive Officer, Margaret Futch, and its human resources director, Lydia Christian, are both white.  Peters, who was hired in early-

---

[1] Although Peters is proceeding pro se on appeal, she was represented by counsel throughout the underlying proceedings in the district court.

[2] We review the grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences therefrom in favor of the nonmoving party.  Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012).  Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

September 2009 as a Rehab Nurse Liaison, was responsible for marketing HealthSouth's rehabilitation services to case managers, physicians, and patients at Flowers Hospital, an acute care facility, in order to obtain patient referrals. According to Peters, she had a fraught and rancorous relationship with her immediate supervisor, Will Craig, and a fellow Rehab Nurse Liaison, Debra Leake, both of whom are African-American.

In December 2009, at the end of her initial 90-day probationary period, Peters received a poor performance evaluation from Craig, which resulted in a 30-day extension of her probation. Peters was informed that she needed to improve her attendance, increase her product knowledge, and increase patient referrals during that time. Three months later, on March 12, 2010, she received a written warning for excessive absenteeism from Christian. That warning indicated that Peters had left work early on March 5 and called in sick on March 10 and 11. Peters was apprised that she would again be placed on a 90-day probationary period if she had any more unscheduled absences within the next month.

Peters first complained about Craig's conduct on June 28, 2010, after he had inadvertently dialed her personal cellphone number and was overheard telling his wife, "I want to know why her ass hasn't been to Donaldsville yet to see that patient." Peters, believing that the comment referred to her, complained to Futch that Craig was creating a hostile work environment and gave Leake preferential

3

treatment, though she did not specifically claim that the apparent hostility or favoritism were racially motivated.  Soon after, Craig and Leake joked in Peters' presence about Craig's phone getting him into trouble.  Peters also overheard Craig and Leake make general comments that she considered to be racially offensive, including Craig describing a potential patient as a "little old white rich lady" and Leake congratulating a black coworker with eighteen grandchildren by saying, "You go sister, you keep our race going."  On other occasions, Peters overheard Craig express his opinion that certain black figures covered in the media for alleged acts of misconduct would have been treated differently if they had been white.

On October 25, 2010, Christian placed Peters on probation for absenteeism due to her unexcused absence from work four days earlier.  During her meeting with Christian, Peters complained about racial discrimination in the marketing department and a hostile work environment created by Craig and Leake.  At a follow-up meeting on November 3, 2010, Christian informed Peters that, upon further consideration, the disciplinary measure for excessive absenteeism had been downgraded to a verbal warning.  Unsatisfied that her complaints had been adequately addressed, Peters again voiced her concerns about racial discrimination and a hostile work environment.

Peters once again complained about Craig's and Leake's behavior during her annual employee evaluation, conducted by Christian and Craig on November 12, 2010.  Peters asserted that Craig had "a set of rules for [Leake] and . . . a different set for me and this is racial discrimination."  Afterward, Craig publicly discussed Peters' performance evaluation with other employees and, when Peters corrected a statement made by Craig, he yelled at her in front of her coworkers.

Less than a week later, Peters had another encounter with Craig, which she viewed as further retaliation for the comments that she made during her annual evaluation.  Unable to locate promotional HealthSouth pens to give to a physical therapist at Flowers Hospital, Peters asked Craig where the pens had gone.  Craig responded that Leake had taken all of the pens and that Peters would have to ask her for some.  Peters later found a bundle of ten pens on her desk.

On May 2, 2011, Futch and Christian again placed Peters on probation for low patient referral numbers.  Peters was advised that failure to improve her performance during the 90-day probationary period might result in her termination.  During that probationary period, Craig called Peters at Flowers Hospital on June 29, 2011, and asked her to complete and submit a quarterly marketing plan before the end of the day.  HealthSouth's corporate office had contacted Craig earlier that day to say that it needed all quarterly marketing plans by the end of the month.  Upon learning that Peters was scheduled to leave work at noon on June 29, Craig

5

offered to cover her duties at Flowers Hospital so that she could return to HealthSouth to complete her marketing plan. When Peters returned to HealthSouth's office, she found a blank marketing form on her desk. She proceeded to list three items on the form, left it on her desk with a sticky note labeled "third quarter plan," and told a coworker that she was leaving.

When Peters returned to work on July 1, 2011, Futch informed her that she was being suspended pending an investigation for insubordination and refusing to submit her marketing plan as Craig had requested. Peters met with Futch and Christian five days later, at which time she was notified that she was being terminated for failing to submit her quarterly marketing plan as directed. Futch explained to Peters that leaving her marketing plan on her desk did not constitute submitting it and that the other Rehab Nurse Liaisons had all submitted their quarterly marketing plans on time. Craig played no part in HealthSouth's decision to terminate Peters.

Within six months of her termination, Peters filed suit against HealthSouth under Title VII and 42 U.S.C. § 1981, alleging claims for disparate treatment on account of her race and unlawful retaliation. Peters, through counsel, maintained that her termination was racially motivated and, in support, asserted that Leake had not been discharged or disciplined in any way for submitting a marketing plan the previous quarter that contained only two items. Peters also contended that she was

6

subjected to a hostile work environment in retaliation for the complaints she made to HealthSouth personnel on June 28, October 25, November 3, and November 12 of 2010. Peters asserted that, after each of those complaints, Craig and Leake had retaliated against her by either "mocking" her, "making fun" of her complaints about a hostile work environment, making "other snide remarks," or yelling at her in front of other employees.[3] To bolster her claim of racial discrimination, Peters submitted affidavits from two of her former coworkers, both of them white, who asserted that Craig exempted Leake from rules concerning tardiness, absenteeism, and work performance. They also claimed Leake was allowed to throw things, use profane language, engage in "protracted tirades," and bully her coworkers (all of whom were white) with impunity.

HealthSouth moved for summary judgment on Peters' claims, which the district court granted. The court found that Peters had not established a prima facie case for disparate treatment based on her termination because she failed to identify a valid comparator outside her race that was treated more favorably. The court reasoned that Leake was not similarly situated to Peters because, unlike Peters, she was not on probation when she submitted a quarterly marketing plan with only two

---

[3] Peters' underlying complaint broadly alleged, without any factual specificity, a number of other purportedly adverse employment actions suffered on account of her race and in response to her complaints of racial discrimination, including in the allocation of leave, the furnishing of work resources, and her placement on probation. In her counseled brief in opposition to summary judgment, however, Peters' racial discrimination claim focused exclusively on her termination, while her retaliation claim was expressly limited to the alleged existence of a hostile work environment.

listed items and there was no evidence to indicate that Leake "turned in" her marketing plan the way Peters had.  As to the retaliation claim, the district court likewise found that Peters failed to make out a prima facie case because her complaints of discrimination did not provoke a materially adverse employment action.  The court explained that the instances of mockery and yelling cited by Peters were not sufficiently severe to amount to a hostile work environment under Title VII.

## II.

Title VII prohibits employers from discriminating against employees with respect to the terms and conditions of their employment, including through discipline or termination, on the basis of a statutorily protected characteristic such as race.  42 U.S.C. § 2000e-2(a)(1).[4]  Where, as here, a plaintiff relies on circumstantial evidence to prove intentional discrimination under Title VII, we apply the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  Under that framework, the plaintiff must first establish a prima case of intentional discrimination, which

---

[4] Race discrimination claims under 42 U.S.C. § 1981 are subject to the same analytical framework as disparate treatment claims under Title VII and, for that reason, our discussion explicitly focuses on Title VII with the understanding that it applies equally to Peters' § 1981 claim.  See Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991) ("The Supreme Court has held that the test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment causes.").

gives rise to a rebuttable presumption of such discrimination.  Id.  The employer must then rebut that presumption by articulating a legitimate nondiscriminatory reason for the challenged employment action, at which point the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason is actually a pretext for intentional discrimination.  Id.

A plaintiff may establish a prima facie case of discriminatory discharge by showing that (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she was discharged from that position, and (4) her employer treated her less favorably than a similarly situated individual outside her protected class (i.e., a comparator).  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 (11th Cir. 2011).  To be an adequate comparator, the individual outside the plaintiff's protected class must be "similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  That is, "we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation marks and brackets omitted); see also Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984) (requiring a plaintiff alleging a discriminatory discharge claim to show "that the misconduct for which he was discharged was nearly identical to that engaged in by

an employee outside the protected class whom the employer retained") (quotation marks and brackets omitted). A plaintiff may, however, withstand summary judgment even in the absence of an adequate comparator if she presents "a convincing mosaic of circumstantial evidence" that would allow a reasonable jury "to infer intentional discrimination by the decisionmaker." Smith, 644 F.3d at 1328 (quotation marks omitted).

Based on the arguments presented to the district court, HealthSouth was entitled to summary judgment on Peters' discriminatory discharge claim because she failed to make a prima facie showing that her termination was racially motivated. In opposing HealthSouth's motion for summary judgment, Peters asserted that Leake, an African-American employee outside her protected class, was not discharged or disciplined in any way for once submitting a quarterly marketing plan consisting of only two items, one less than Peters had listed on the marketing plan that ostensibly resulted in her termination. The "quantity and quality" of Leake's asserted misconduct, however, was not nearly identical to Peter's, such that Leake could serve as an adequate comparator for purposes of establishing a prima case for disparate treatment. See Burke-Fowler, 447 F.3d at 1323. There is no evidence that Leake, like Peters, was on probation for low referral numbers when she submitted a quarterly marketing plan consisting of only two items. As the district court trenchantly observed, "HealthSouth may well have

10

been justified in expecting a more robust plan from Ms. Peters" given her probationary status and management's view that her work performance was wanting. More importantly, Peters was not terminated for failing to list more than a few items on her quarterly marketing plan; she was terminated for failing to timely submit her plan as specifically requested by her supervisor. And there is no evidence that Leake had similarly failed to submit a quarterly marketing plan in defiance of an explicit directive from one of her superiors.

Furthermore, Peters' supposed evidence of unlawful discrimination — consisting of overheard, racially tinged conversations and affidavits attesting to Craig's preferential treatment of Leake — was not sufficient to raise a reasonable inference that her discharge was motivated by her white race. The undisputed evidence shows that Futch, a white woman, made the decision to fire Peters for failing to properly submit her quarterly marketing plan and that Craig was in no way involved in that decision. Indeed, Peters acknowledged in her deposition testimony that she did not believe that Futch had discriminated against her because of her race. That concession alone was enough to warrant summary judgment on Peters' claim of discriminatory discharge. See Ross v. Jefferson Cnty. Dep't of Health, 701 F.3d 655, 661 (11th Cir. 2012) (holding that summary judgment was appropriate on a claim of racial discrimination where the plaintiff stated in her

11

deposition testimony that she did not believe that her termination had anything to do with her race). [5]

### III.

Title VII's anti-retaliation provision prohibits employers from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Retaliation claims based on circumstantial evidence are also analyzed according to the McDonnel Douglas burden-shifting framework.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  To make out a prima facie case of unlawful retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse employment action, and (3) there is a causal relationship between the two events.  Alvarez, 610 F.3d at 1268.

---

[5] On appeal, Peters makes a number of arguments concerning her discrimination claim that were not properly presented to the district court.  She contends that she was "falsely" placed on probation for low referral numbers, that she was subject to disparate treatment because Leake likewise should have been placed on probation, and that Futch had reason to discriminate against her in order to placate HealthSouth's black employees.  On this last point, Peters contends that Craig had filed a racial discrimination complaint against Futch with the Equal Employment Opportunity Commission in 2005 or 2006, which purportedly furnished Futch with good reason to terminate her in order "to keep peace with HealthSouth and black employees."  Because none of these arguments were raised before the district court in opposition to HealthSouth's motion for summary judgment, they are not properly before us and will not be considered on appeal.  See Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

In the district court, Peters claimed that Craig and Leake subjected her to a hostile work environment in retaliation for the complaints she lodged with HealthSouth's management on June 28, October 25, November 3, and November 12 of 2010.[6] To demonstrate a hostile work environment, and thus a materially adverse employment action, a plaintiff must show that her workplace was permeated with "intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) (quotation marks omitted). The objective severity of alleged harassment is evaluated under the totality of the circumstances, including "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonable interferes with the employee's job performance." Id. at 1312 (quotation marks omitted).

---

[6] The record indicates that Peters, both during and shortly after her employment with HealthSouth, filed several complaints with the EEOC alleging that she was subjected to a hostile work environment, disciplined and ultimately terminated due to her race, and discharged in retaliation for her complaints of discrimination. Before the district court, however, Peters did not rely on her EEOC complaints as the basis for her retaliation claim or argue that she was terminated in retaliation for any of her complaints of racial discrimination. Instead, she limited her claim to the alleged hostile work environment created by Leake and Craig in response to the internal complaints she made to HealthSouth. We therefore do not consider any other retaliation claims that Peters could have, but failed to, assert before the district court. See Hurley, 233 F.3d at 1297.

13

Even assuming that each of Peters' four complaints to HealthSouth constitutes statutorily protected conduct and that there was a causal relationship between those complaints and the alleged acts of retaliation, she still failed to show that she was exposed to an objectively severe work environment. The discrete instances of mockery and yelling identified by Peters, which were neither physically threatening nor particularly frequent, were not sufficiently severe or pervasive to rise to the extreme level of abuse demanded by Title VII. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283–84 (1998) (emphasizing that "conduct must be extreme to amount to a change in terms and conditions of employment," and that "the sporadic use of abusive language," "occasional teasing," and "offhand comments" are not enough to support a hostile work environment claim). Title VII is not a "general civility code" that broadly prohibits objectionable conduct or language; it only forbids conduct that is so objectively offensive as to alter the conditions of a person's employment. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) (quotation marks). We decline Peters' implicit invitation to transform Title VII into a general civility code that bars any and all workplace conduct that smacks of immaturity, boorishness, discourtesy, or bad taste. Because she was unable to establish a prima facie case of retaliation, HealthSouth was entitled to summary judgment on her claim.

14

**AFFIRMED.**