[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10420
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00302-RH-CAS


ROBIN TUCKER,

Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF TRANSPORTATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 2, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Robin Tucker ("Plaintiff") appeals the district court's grant of summary judgment in favor of Defendant Florida Department of Transportation ("Defendant").  Plaintiff alleges she was terminated in retaliation for reporting sexual harassment by her supervisor.  Concluding that Plaintiff has not set out a prima facie case of retaliation under Title VII nor shown that Defendant's claimed reasons for her termination are pretextual, we **AFFIRM**.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff began working for the Florida Department of Transportation in June 2012 as an administrative assistant assigned to Assistant Secretary Brian Peters.  Her responsibilities included managing Peters' calendar and office, scheduling meetings, and completing other special projects as assigned.  Plaintiff worked in the "Executive Suite," where Peters, along with DOT Secretary Ananth Prasad and other DOT executives, had their offices.

On December 6, 2012, Peters critiqued Plaintiff's work performance as part of a formal mid-cycle evaluation.  Peters gave Plaintiff an overall score of 2.9 out of 5.0; a 3.0 indicates that the employee consistently meets performance expectations.  Peters told Plaintiff that he would take 30 to 60 days to decide whether he would keep Plaintiff as his assistant, and that he would remove her from her position if his personal assessment of her work did not improve.

2

Thereafter, in mid-December, Plaintiff began drafting a memorandum to Secretary Prasad, which she revised twice before submitting it to him on January 29, 2013, just after Peters had informed her that she should look for other employment.  In fact, the memorandum noted that Peters had informed Plaintiff that her position would be eliminated and that she should begin to look for outside employment.

As to the substance of the memorandum, it detailed her complaints about Peters as a supervisor and his allegedly unprofessional behavior, including actions that Plaintiff now asserts were sexual harassment.  Under a heading of "Inappropriate comments/looks," Plaintiff listed several statements made my Peters:  "My wife is more petite than you"; "I need more than a pretty face—I need somebody who can think"; and "I have my harem here today."  The memorandum also stated that Plaintiff was "extremely uncomfortable" with the way that Peters had looked at her, and this behavior was "noticeable and very awkward for [her]."  Plaintiff elaborated in her deposition testimony—but not in the memorandum— that Peters "looked [her] up and down and he stared at [her] breasts and [her] bottom."

Plaintiff now claims that Peters had promised to transfer her to another position within DOT, but between December 6, 2012, and January 30, 2013, he "waffled" on his intentions to actually transfer her.  Peters disagrees that he ever

3

made such a commitment, contending that he only said he would help if he could.

Secretary Prasad's assistant testified in her deposition that Peters told her that he

"was going to try to get [Plaintiff] a job," but she did not recall whether that was

before or after Plaintiff submitted the memorandum. Peters states that he found

open positions at DOT, but he told Plaintiff that the onus was on her to apply and

interview for the open positions. Plaintiff did not apply for these positions,

believing that she would be transferred to an open position without the need to

apply.

On February 19, 2013, Peters told Plaintiff that Friday (February 22) would

"probably" be her last day. On February 21, Plaintiff informed some of her

colleagues via email that it was her last day at work. Later that day, Plaintiff was

asked to sign a resignation letter by a human resources representative but refused.

Plaintiff later received a letter in the mail, noting her termination was effective as

of February 21, 2013.

## B. Procedural History

Plaintiff sued Defendant in Florida state court under Title VII and the

Florida Civil Rights Act (FCRA) for sex discrimination and retaliation.[1]

---

[1] Title VII prohibits an employer from retaliating against an employee because the employee "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). Plaintiff's state law claims do not require separate discussion because the FCRA is modeled after Title VII and the same framework is used to analyze these claims. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010). The FCRA reads in relevant part: "It is an unlawful employment practice for an employer . . . to discriminate against

Defendant removed the case to federal court, and Plaintiff filed an amended complaint. Defendant moved for summary judgment, and Plaintiff voluntarily dismissed her gender discrimination claim, moving forward with her retaliation claim only.  The district court granted Defendant's motion, and Plaintiff timely appealed.

## II.  DISCUSSION

### A.  Standard of Review

We review *de novo* a district court's grant of summary judgment, viewing all evidence in the light most favorable to the non-moving party.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  A movant is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Plaintiff's Title VII Retaliation Claim

For Plaintiff to prevail on her Title VII retaliation claim, she must first demonstrate a prima facie case of retaliation.  This requires a plaintiff to show that

---

any person because that person has opposed any practice which is an unlawful employment practice under this section."  FLA. STAT. § 760.10(7).

(1) she engaged in protected activity under Title VII, (2) she suffered a materially adverse employment action, and (3) there was a causal relationship between the two. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012). When a plaintiff relies only on circumstantial evidence, as Plaintiff does here, we generally apply the *McDonnell Douglas* burden-shifting framework to determine whether her claim should survive a motion for summary judgment. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, after establishing a prima facie case, the burden shifts back to the employer to articulate a legitimate, non-retaliatory reason for the adverse action, which the plaintiff can rebut by showing that the proffered reason was merely pretextual. *Id.* at 1181–82.

The district court held that Plaintiff had not established a prima facie case for retaliation, and even had she done so, she failed to show that Peters' explanations for her termination were pretextual. We agree.

### 1.  Whether Plaintiff Set Out a Prima Facie Case of Retaliation

The district court concluded that Plaintiff had failed to make a prima facie case of retaliation because she had failed to show that she engaged in protected conduct. Specifically, her memorandum neither explicitly complained of sexual harassment nor did the conduct complained of therein give rise to an objective belief that any sexual harassment had occurred. *See Little v. United Techs.,*

6

*Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997).  Even were we to assume that Plaintiff engaged in protected activity for the purposes of Title VII, Plaintiff has failed to establish that this protected activity was causally related to her termination.[2]  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (noting that the court did not need to address the issue of whether an activity was protected when the prima facie case would otherwise fail on the causation element).  To establish causation, Plaintiff attempts to rely on the well-established principle that "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'"  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  Logic dictates that the protected conduct must precede the act of retaliation.  *See Brungart*, 231 F.3d at 799 ("A decision maker cannot have been motivated to retaliate by something unknown to him.").

Because Plaintiff's memorandum acknowledges that Peters announced his

---

[2]  Though the district court did not address the causation element in its decision, both parties have discussed the issue in their briefs and in the underlying motion for summary judgment, and "[w]e may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

decision to terminate her prior to her submission of the memorandum,[3] Plaintiff necessarily fails to prove that the decision to terminate was prompted by her submission of this document to Secretary Prasad.  Plaintiff argues that the act of retaliation was not the termination decision itself, but rather Peters' failure to transfer her to a different position within DOT after she submitted the memorandum.  To the extent that Plaintiff articulates a meaningful distinction here, she still cannot demonstrate causation.  Temporal proximity between the protected activity and the adverse action alone generally cannot show causation when the employer has contemplated the adverse action before the protected activity takes place.  *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1245 (11th Cir. 2016) (concluding that "no triable issue of causation exists" in retaliation claim when school district raised ethics concerns prior to administrator's protected activity, even though formal ethics complaint was filed afterwards); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n a [Family and Medical Leave Act] retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.")  Indeed, "Title VII's anti-retaliation provisions do

---

[3]  Plaintiff's memorandum states:  "On January 29, 2013, [Peters] told me that he was going to eliminate my position and move me to another position within DOT, if possible, but my salary would be lower.  He suggested I begin to look for outside employment."

not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a [] complaint." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010).

Even if Peters had told Plaintiff at some point that he would facilitate a transfer to a new position, Plaintiff herself stated in her deposition testimony that she believes Peters had made the decision to terminate her—and not to transfer her—well before she submitted the memorandum to Secretary Prasad on January 29, 2013. Thus, Plaintiff has not established a causal connection between Peters' failure to transfer her and her protected activity, and therefore cannot establish a prima facie case of retaliation under Title VII.

### 2. Whether Peters' Proffered Reasons are Pretextual

Even assuming that Plaintiff established a prima facie case of retaliation, her claim still fails. Like the district court, we conclude that Defendant has articulated legitimate, non-retaliatory reasons for Plaintiff's termination, and Plaintiff has not shown that "the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *see also Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) ("A reason is not pretext . . . 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993))).

9

The first reason Defendant offers is Plaintiff's poor job performance.  In evaluating the validity of this reason, the relevant inquiry is what Peters thought about Plaintiff's job performance—not what Plaintiff or fellow employees thought, what Plaintiff's other supervisors thought, or even "reality as it exists outside of [Peters'] head."  *See Alvarez*, 610 F.3d at 1266.  Even if Peters was wrong in his appraisal of Plaintiff's abilities and his resulting decision to terminate her, his explanation of the reasons for his decision can only be rebutted if "unlawful [retaliatory] animus motivated the decision."  *Id.* (internal quotation marks omitted).  Yet, Plaintiff disputes only a conclusion that she was a poor employee, not the fact that Peters thought her work and attendance were unsatisfactory.  Thus, Plaintiff's evidence of good work performance does not salvage her claim.  To the contrary, the evidence in the record supports Defendant's stated reason for termination because Peters gave Plaintiff a negative performance evaluation prior to Plaintiff's submission of the memorandum that she now says constituted protected conduct.

Plaintiff also argues that the deposition testimony of Robert Framingham—a human resources employee at DOT who vaguely testified to his belief that Plaintiff was fired for "gossiping" about Peters—provides evidence of retaliation sufficient to refute poor performance as the true reason for Plaintiff's termination.  We are not required to take as true, even at the summary judgment stage, any opinion of

10

Framingham's concerning Peters' actual motivations for terminating Plaintiff because such opinion is not based on direct personal knowledge. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007).  Also, Framingham's testimony does not contradict Peters' documented opinion that Plaintiff's work performance was poor, nor does that testimony indicate that the gossip by Plaintiff to which he refers was Plaintiff's memorandum to Secretary Prasad, which communication constitutes the only protected activity in this case.

Defendant's second reason for terminating Plaintiff was that the assistants in her section were underutilized, and eliminating Plaintiff's position would save state funds.  The record supports this reason as being true.  Peters testified that another assistant working in the Executive Suite took over Plaintiff's duties—and thus provided support for two individuals—and Peters did not hire a new person to replace Plaintiff or assist her replacement.  In fact, other executives at DOT were also sharing assistants at this time.  More importantly, Plaintiff points to no evidence suggesting that Peters did not believe that reducing support staff would save state funds, let alone evidence that Peters' real reason for eliminating Plaintiff's position was to retaliate against her.  Plaintiff accordingly fails to rebut, as being pretextual, either of Defendant's reasons for her termination.

## III.  CONCLUSION

11

To survive summary judgment in a Title VII retaliation case, a plaintiff must both show a causal connection between her protected activity and the adverse employment action subsequently taken against her, as well as refute as pretextual legitimate reasons that the defendant offers.  Plaintiff has failed to make these showings.  Accordingly, we **AFFIRM** the district court's order granting summary judgment for Defendant.