[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10431
Non-Argument Calendar

_____

D.C. Docket No. 6:16-cv-00360-JA-KRS

EYVETTE HUTCHINSON,

Plaintiff - Appellant,

versus

SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 15, 2019)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Eyvette Hutchinson appeals the district court's grant of summary judgment to her employer, the Secretary of the Department of Veterans Affairs ("VA") on Hutchinson's claim under Title VII for sex- and race-based discrimination. After careful review, we affirm.

## I.    BACKGROUND

Hutchinson is an African-American woman who, at the time of this lawsuit, was employed by the Orlando VA Medical Center (the "Center") as a Program Support Assistant for Mental Health Intensive Case Management, a GS-6 position in which she provided administrative and office management support to her team. In late 2010, the VA opened a position for Personnel Security Specialist, a GS-9 position, because it had been tasked with providing new security badges to all current Center staff and new hires at a new medical center—approximately 3,300 people in total—by early 2013 (a time frame of under two years once hiring was completed). The vacancy announcement required that each applicant possess "one year of specialized experience equivalent to at least GS-7" grade level and defined "specialized experience" in the alternative as either direct experience in the security field or education demonstrating the knowledge, skills, and abilities necessary to do the job. Doc. 27-12 at 3.[1] To qualify based on experience, the announcement required "progressively responsible intelligence-related security

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

2

work directly related to the position," which "may include previous military experience," and "technical competence in automated information systems to include but not limited to E-Quip,[2] electronic fingerprinting, [and] access database development and maintenance." *Id.* To qualify based on education, the announcement required a "master's or equivalent graduate degree . . . [that] demonstrate[d] the knowledge, skills and abilities necessary to do the work," "2 full years of progressively higher level graduate education leading to such a degree," or a combination of education and experience "to meet total qualification requirements for the grade level." *Id.* The announcement stated that "[t]he most highly qualified candidates [would] be referred to the hiring manager for further consideration and possible interview." *Id.* at 6.

Hutchinson applied for the position. In her application, Hutchinson described her experience as having "[m]anaged all aspects of Personnel Security matters of the Southwestern Army Reserve Intelligence Support Center and the National Guard"; "[m]aintained official and personnel security records for 700+ personnel in a nine state region"; "[t]ailored security program . . . requirements to meet organizational needs"; "[w]orked daily with Joint Personnel Adjudication

---

[2] This system is variously referred to in the record as "E-QUIP," "E-Quip," and "e-QIP." The parties do not dispute that all of these acronyms refer to the same system. The correct acronym is e-QIP. *See* e-QIP: Electronic Questionnaires for Investigations Processing, https://nbib.opm.gov/e-qip-background-investigations (last accessed Feb. 18, 2019).

System (JPAS) and other Department of Defense (DoD) personnel security systems to process security clearance"; "[p]rocessed Security Clearances and periodic reinvestigations of clearances using JPAS and Electronic Questionnaires for Investigation Processing (E-Quip) System"; "[t]rained newly assigned personnel in JPAS and other DoD Personnel systems; and "[s]erved as the Special Security Officer . . . for 450 personnel, by managing information security, physical security, personnel security, operational security and all aspects of [certain] security programs." Doc. 27-11 at 3-4. Her application reflected that her most recent security-related job was that of "Personnel Security Manager" or "Assistant Security Officer"—the application listed both titles—which she held from 2005 to 2007. *Id.* at 8. It was in that job, Hutchinson indicated, that she had experience with JPAS and e-QIP.

Hutchinson also listed her education, which included a master's degree in Organizational Management and a bachelor's degree in Business Administration; she further reported that she was currently pursuing a master's degree in business administration. Unbeknownst to her when she applied, Hutchinson's name was placed on three separate lists certifying that she was entitled to preferential hiring treatment as a veteran.

The hiring panel for the Personnel Security Specialist position was comprised of three people: Tracy Skala, the Center's Chief of Human Resources;

Joseph Greene, the Center's Assistant Human Resources Officer; and Steve Sabol, Jr., the Center's Chief of Police.  Twenty-nine applicants deemed minimally qualified for the position, Hutchinson included, were referred to Skala for further consideration.  Skala reviewed and scored each of those applicants and determined who would receive an interview before the hiring panel.  She testified that the main thing she was looking for in a candidate was "significant current and relevant experience with the e-QIP" because the person hired would need to provide all current staff and staff for the new facility with security badges by the early 2013 deadline.  Doc. 27-13 at 4.  The hiring panel interviewed three candidates; Hutchinson was not among them.

The VA notified Hutchinson in April 2011 that she was not selected for the position.  Instead, the VA selected Ross Holman, a white man.  When Hutchinson was informed of the VA's hiring decision, a human resources officer explained to Hutchinson that although she was classed for preference as a veteran, she "did not meet time-in-grade for a promotion" because "the highest grade [she] held was a G-6," that she "qualified based on [her] experience in the military," and that Holman "had more experience and related education."  Doc. 27-6 at 2.  Holman's application for the position showed that he had worked—from 2009 until he applied for the position—as an "Installation Security Program Manager" for the Michigan Air National Guard overseeing 14 employees and providing training and

oversight.  Doc. 27-17 at 2.  He also served as a Shift Supervisor for the Guard beginning in 2003 and continuing to the time of his application.  In that role, Holman was the senior military police officer for the shift, oversaw a team of nearly 15 subordinates, and was experienced in report writing.  He also indicated in his application that as Installation Personnel Security Manager he "maintain[ed] accounts" in e-QIP, JPAS, and Central Adjudication Security Personnel Repository (CASPR), that he "manage[d] and process[ed] all security clearances within the wing," that he was responsible for reviewing electronic questionnaires for errors, and that he had "numerous years of experience" submitting fingerprint cards to the Office of Personnel Management (OPM).  *Id.* at 4-5.  Holman indicated that he had obtained an associate's degree in criminal justice and was seeking a certificate in Criminal Profiling and Analysis.  Holman's name appeared on at least two veteran preference lists.

Skala testified that the hiring panel selected Holman because of his "more current experience with e-QIP," both "the process and the program," including programs such as JPAS and CASPR that interacted with e-QIP.  Doc.  27-13 at 5, 7.  Compared to Hutchinson, Skala testified, Holman "was maintaining multiple accounts and was actually running the system, not just assisting with individuals" in converting their security data from paper to electronic forms.  *Id.* at 7.  Skala further testified that she took the applicants' education into account but concluded

that Holman's education, although lesser, "was in a relative career field to the position." *Id.* at 8.  Greene, also on the hiring panel, noted that although Hutchinson listed "Personnel Security Manager" as her job title from 2005 to 2007, the application was ambiguous because her title also was listed as "Assistant Security Officer," which Greene surmised would be a lesser position than management.  Skala and Greene testified that the hiring panel's decision not to select Hutchinson had nothing to do with her race or sex.

Hutchinson lodged a complaint with an Equal Employment Opportunity counselor at the VA's Office of Resolution Management.  During the investigation, she testified that she believed herself to be more qualified than Holman based on more years of experience and a higher level of education.  Specifically, she testified that although her resume listed only two years of personnel security experience—from 2005 to 2007—she actually had 11 years of experience, beginning in 1994, which she would have described in an interview.  She clarified that from 2005 to 2007 she was in fact a manager, not an assistant.

After the Equal Employment Opportunity Commission issued her a right-to-sue letter, Hutchinson sued the VA in federal district court alleging one count of discrimination under Title VII based on her race and sex.  Specifically, Hutchinson alleged that she was turned down for the position of Personnel Security Specialist because of these traits.  At the close of discovery, the VA moved for summary

7

judgment.  The district court granted the VA's motion, concluding that although Hutchinson established a *prima facie* case of discrimination, the VA had articulated legitimate, non-discriminatory reasons for not hiring her for the position, and she failed to establish that any of the VA's reasons were pretextual.  The district court further concluded that Hutchinson failed to present a "convincing mosaic of circumstantial evidence from which a jury could infer discrimination," *see Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), because she failed to show pretext or to present evidence regarding the sex and race of the other applicants or their qualifications.  Doc. 38 at 22.

This is Hutchinson's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012).  Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.   DISCUSSION

On appeal, Hutchinson argues that summary judgment was improper because she offered evidence that the VA failed to follow policies and procedures governing interviewing job candidates, and that evidence was sufficient to show pretext. She further argues that the district court erred by relying too heavily on the *McDonnell Douglas* framework, and that she presented a sufficient "convincing mosaic" of circumstantial evidence of discrimination that her case should be heard by a jury. After a brief discussion of Title VII and the relevant analytical framework, we address these arguments in turn.

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or]. . . sex." 42 U.S.C. § 2000e-2(a)(1).[3] In the absence of direct evidence of discrimination (which Hutchinson lacks), we analyze discrimination claims according to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

---

[3] Title VII applies to several federal executive agencies, including the VA. 42 U.S.C. § 2000e-16(a).

9

Under the first step of this framework, the employee must establish a prima facie case of discrimination by showing that:  (1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly situated employees outside her classification more favorably, and (4) she was qualified to do the job.  *Id.* at 1091.  Establishing a prima facie case gives rise to a presumption that the adverse action was discriminatory.  *Id.* at 1087.  The burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions.  *Id.*  If the employer carries its burden, the presumption raised by the prima facie case is rebutted and the burden shifts back to the employee to show that the "the alleged reason . . . is a pretext for illegal discrimination."  *Id.*  A plaintiff satisfies her burden to show pretext by showing that the employer's proffered reason is so weak, implausible, inconsistent, incoherent, or contradictory that a reasonable factfinder could find the reason unworthy of credence.  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

"[E]stablishing the elements of the *McDonnell Douglas* framework is not, and was never intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith*, 644 F.3d at 1328 (internal quotation marks omitted).  In *Smith*, we explained that a plaintiff need not establish each of the *McDonnell Douglas* elements to survive summary judgment;

10

instead, she may survive summary judgment where she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

The VA conceded, and the district court concluded, that Hutchinson established a *prima facie* case of race and sex discrimination. On appeal Hutchinson does not contest that the VA offered a legitimate, nondiscriminatory reason for declining to promote her. We therefore do not discuss those aspects of Hutchinson's claim further. The focus of this appeal, then, is on two things: whether the district court erred in determining that (1) Hutchinson failed to show pretext, and (2) she failed to establish a convincing mosaic of circumstantial evidence of discrimination. For the reasons that follow, we conclude that she has shown neither.

### A. Hutchinson Has Failed to Demonstrate Pretext.

On appeal Hutchinson argues that the district court erred in concluding that she failed to show pretext. Specifically, she argues that the VA failed to follow established policies and procedures in the hiring process, which shows its stated reasons for choosing Holman were pretextual. We disagree.

"Departures from normal procedures may be suggestive of discrimination." *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985). Hutchinson argues that the VA violated three policies and procedures and that together these violations

11

demonstrate pretext. First, Hutchinson cites an excerpt from the VA's 2008 Medical Center Policy, which states that "[i]f interviews are conducted, all applicants referred on any one [veterans preference list] will be interviewed if any one applicant on the same [list] is interviewed." Doc. 28-6 at 2. She says that the VA relied on the lists, which included her, when choosing whom to interview and hire but nonetheless did not hire her. Second, Hutchinson cites an excerpted provision in the VA's Master Agreement with the American Federation of Government Employees, which states that "if interviews are used, all candidates must be interviewed if reasonably available." *Id.* at 1. She points to the fact that she was not interviewed as evidence of a violation of the Master Agreement. Third, Hutchinson cites federal law, which provides that "[i]f an appointing authority proposes to pass over" a person given preference by a preference list, the authority must provide OPM with notice of intent to pass over the person and make the person aware of her right to rebut the authority's reasons for the pass-over. *See* 5 U.S.C. § 3318(c)(1), (2). She says that she never received such notice or a right to rebut the VA's reasons for the pass-over and that her lack of notice is evidence of pretext.

The district court was unpersuaded, and neither are we. As the district court concluded, Hutchinson offered no evidence to show that the 2008 Medical Center Policy or the Master Agreement was in effect during the 2010 to 2011 hiring

12

process or applied to the position.  Although on appeal Hutchinson argues that "the record evidence conclusively established that the [VA] did in fact violate its policy," Appellant's Br. at 11, she cites no such evidence.  Moreover, Hutchinson offered no evidence that the VA passed Hutchinson over to select someone who was not given preference by a preference list in violation of federal law.  In fact, as the district court concluded, Hutchinson's own evidence indicated that Holman also was listed on veterans' preference lists.[4]  Thus, Hutchinson has not offered evidence to show that the VA actually violated applicable policies and procedures.

We further agree with the district court that even if the VA violated a policy or procedure respecting interviewing candidates, that violation would be insufficient under the facts of this case to defeat summary judgment.  The vacancy announcement specifically informed applicants that "[t]he most highly qualified candidates [would] be referred to the hiring manager for further consideration and possible interview."  Doc. 27-12 at 6.  This statement made clear that not all

---

[4] Hutchinson contends that the VA relied on the veteran preference lists when determining whom to interview and hire but nonetheless failed to interview her, even though her name appeared on these lists, thus giving rise to an inference of intentional discrimination.  She has offered insufficient evidence to support such an inference.  The evidence Hutchinson offered reveals only two facts:  her name was on three such lists and Holman's name was on two of the same lists.  Although Hutchinson asserts that the VA "interviewed three individuals from the [veteran preference] list," Appellant's Br. at 11, she fails to identify the individuals (other than Holman) or from which list the individuals' names came.  This "mere scintilla of evidence in support of" her position is insufficient to support the inference Hutchinson asks us to draw.  *Anderson*, 477 U.S. at 252.

13

qualified applicants would receive an interview, thereby conveying that the VA would not follow the Master Agreement or the 2008 VA Medical Center Policy even if one or both should have applied. And because the statement was made to all applicants, it directly contradicts Hutchinson's assertion that the policy and procedure violations demonstrate discriminatory animus toward her specifically.

The remainder of Hutchinson's argument boils down to an assertion that she was as qualified or more qualified than Holman and therefore should have been hired for the position. She argues that the district court erred in "play[ing] down [her] superior academic achievements compared to" Holman's. Appellant's Br. at 13. She argues that "her advanced degrees certainly did not establish that she was not the most qualified for the position," and that her education, "taken with all of the other record evidence, . . . certainly raises a factual question as to why she was not at least granted an interview for the position." *Id.* Essentially, Hutchinson's argument is that the VA should have valued education as much or more than experience and therefore should have valued her application over Holman's. But "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). The VA articulated three legitimate reasons for choosing Holman over Hutchinson: Holman's experience was (1) more current and (2) more relevant, and (3) Hutchinson's application was

14

ambiguous as to whether her single listed security position was that of a manager or an assistant. Hutchinson has failed to come forward with any evidence that these reasons served as pretext for discrimination based on her sex or race. We therefore reject her argument that the district court erred in determining that she failed to show pretext.[5]

## B. Hutchinson Has Failed to Present a Convincing Mosaic of Evidence of Discrimination.

Hutchinson also argues that the district court erred in relying too heavily on the *McDonnell Douglas* framework and that she satisfied *Smith*'s "convincing mosaic" requirement. In doing so, however, Hutchinson merely reiterates the same arguments she makes in support of her contention that she has shown pretext. As we concluded above, Hutchinson has failed to offer circumstantial evidence that she was discriminated against based on her sex or race. Thus, she has not satisfied *Smith*, and the district court was correct to determine that she could not withstand the VA's motion for summary judgment on this alternative ground.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to the VA.

---

[5] Hutchinson also argues that, even assuming the district court's pretext ruling was correct, "public policy would dictate that a broader standard for analyzing pretext be permitted at the summary judgment level." Appellant's Br. at 14. Whether or not this is the case, we remain bound by precedent to apply the pretext analysis as our caselaw has defined it. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

**AFFIRMED.**